Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open. The Honorable Justice Joseph Burkett presiding, along with Justice Susan F. Hutchinson and Justice Mary S. Shostak. The case is number 219-0631, Pekin Insurance Company, Plaintiff-Appellee v. McKeown Classic Homes, Incorporated, et al., Defendants-Appellees. Arguing for the appellant, Anthony G. Barone. Arguing for the appellee is Rich Bergland. Mr. Barone, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, I represent the appellant McKeown Classic Homes and Jerome McKeown. This is an insurance coverage duty-to-defend case. The appellant is a contractor hired to build a luxury home for the Hula Millers. In the underlying lawsuit, in paragraph 20 of count 2, it's alleged that McKeown converted wood planks, a sink, and a few other items without consent. In paragraph 21 of count 2, it's alleged that he refused to return those items. In paragraph 22 of count 2, it alleges damages of $25,000. There's also a paragraph 23 that alleges the conduct was willful, wanton, and undertaken with an intent to defraud, justifying punitive damages. The Pekin claimed that there was no occurrence alleged. Cross motions for summary judgment were filed. The trial court found intentional conduct, so it determined there was no occurrence and ruled for Pekin. In ruling, the trial court also refused to consider the underlying claimants, the Hula Millers, interrogatory answers, which we believe created a question of fact, whether an accident was involved as they describe a miscommunication. We believe the trial court's ruling was an error based on blackletter insurance law. Pekin insurance policy covers occurrences which are defined as an accident. The policy does not define an accident, but numerous cases do. The key question in determining whether something's an accident is whether or not the injury was intended. If the injury that was resulted was not intended, it's an injury that potentially falls within coverage. The insurer has a duty to defend. All doubts as to the duty to defend are resolved in favor of the insured, and as explained by several courts, the insurer must defend unless the underlying plaintiffs will not be able to prove the insured libel without proving facts that also bring the loss outside of coverage. Putting aside the plaintiffs here can prevail without proving facts that show an intent to injure based on their complaint. The plaintiffs have sued for conversion. While to prove that intentional tort, they have to show an intentional act, they do not need to show any intent to injure. In fact, in our brief, we've cited numerous cases involving intentional torts from conversion, trespass, defamation, etc., where the courts have found that can constitute an accident for insurance coverage. Going back to the allegations of the underlying complaint, paragraph 20 alleges that McEwen took plaintiff's property without consent, but does not allege why, how, or that he did so knowingly, only that the property was knowingly owned by plaintiffs. The taking may have been intentional, but no intent to injure is alleged. In paragraph 21, it alleges McEwen refused to return the property, but it doesn't allege why or that there was an intent to injure. Paragraph 22 simply alleges resulting damages. Hula Miller can prevail on their conversion claim on these allegations without ever proving an intent to injure. I'd like to describe McEwen's position because it illustrates a scenario of potential where he could be found liable despite no intent to injure. In other words, even if the conduct was an accident. McEwen hired a subcontractor to tear down the existing home. The subcontractor mistakenly took the planks of wood and other property and threw them out. McEwen couldn't return them because they had been discarded. This scenario is not inconsistent with the And, according to this court's ruling in Pekin v. Hallmark, the test is not whether the complaint directly alleges facts that show that the claim is within coverage provided by the policy. Rather, the insurer owes a duty to defend unless the insurance cannot possibly cover the liability arising from the facts alleged and the terms of the policy clearly preclude coverage under all of the facts. McEwen's contention is that the claim involves an accident. Despite that, the claimants could still prevail even if McEwen's contention is believed because the claimants don't need to show an intent to injure. But, since there's a Pekin's entire case is based on the allegations of a separate paragraph, paragraph 23, that alleges willful and wanton conduct and intent to defraud to support their punitive damage allegations. That is irrelevant to the duty to defend. Plaintiffs can prevail on their punitive damage, I'm sorry, plaintiffs can prevail on their conversion claim without prevailing on their punitive damage claim. So, there is a potential for coverage here. Pekin also contends that this court has to look at every allegation of the plaintiff's complaint and that's simply not the case. In ruling against Pekin in the Hallmark case, this court ignored allegations Pekin focused on in the complaint, alleging that the defendants in each of them acted negligently, finding despite this that only one, there was a scenario where only one defendant could be liable, which was important as it was vicarious liability type coverage. Instead, this court focused on the test that I just discussed, which is if the plaintiffs can prevail without proving facts bringing the claim outside of coverage, the duty to defend exists. For the reasons stated before, that's the ruling in favor of appellant for the court to have considered the Hula Miller's interrogatory answers. We believe it was error not to do so and they clearly would have created a question of fact. The Supreme Court decision in Pekin versus Wilson gave the court the ability to do so. It said the court shouldn't be wearing blinders in ruling on a motion for summary judgment. This court in Pekin versus Dose allows the court to consider extraneous matters as well. While this court in Pekin versus Dose cautioned against using material prepared by the insured, that's not the case here. The material that McEwen asked the court to review, it did ask the court to review the counterclaim, but what we're talking about now are interrogatory answers that were prepared by the claimants. So for those reasons and the other reasons set forth in our brief, we believe the trial court's ruling was in error. Happy to take any questions the panel may have. Thank you. Thank you, Mr. Veroni. Justice Hutchinson, your questions. Thank you, Justice Burkett. Counsel, you say that the case was tendered to the insurance company. How did that tender occur? What was filed with the insurance company or sent? After the lawsuit was filed against McEwen and he received it, it was sent to the insurance company for defense and the insurance company then denied coverage. So the insurance company actually had knowledge of the allegations that were made by the the Hula Millers, I guess their name is. The weren't paraphrased, it was the actual complaint, correct? Yes, Your Honor. All right, so under, you say it can, they can proceed then to prove conversion without the intent to injure or defraud. I know you don't have to prove your case at this point, but how would that be accomplished generally? The Hula Millers could prove that McEwen intentionally took their property and here that occurred in that he hired a subcontractor and that subcontractor took that property, but they do not need to prove, they also need to prove that he didn't return it. Here he couldn't return it, but that does not mean that he had any intent to injure, it was just an accident. The subcontractor mistakenly took the planks of wood when it demolished the house and threw the rest of the debris away and McEwen was in no position to return it because it didn't exist anymore, it had been discarded. So it can still be an accident, which is what coverage McEwen paid for for peeking the cover, even though conversion is an intentional tort. How do we deal with his statements that, you know, I'll make a better clubhouse, don't worry about it, something like that, when this all comes to a head, probably out there on the site. Not an allegation of, not an allegation of plaintiff's complaint that was contained in plaintiff's interrogatory answer and, you know, McEwen could very well dispute that. Plaintiffs could still prevail on conversion though, even though it's an accident. In that, they own planks of wood and they weren't returned, so it's still what we're talking about. I'm sorry, Your Honor, go ahead. No, go ahead, you finish. What we're talking about here is the duty to defend, not the duty to indemnify. The only issue that we have in this coverage dispute is the duty to defend. So perhaps those allegations about the clubhouse and the promise to build a better one, maybe those are relevant to an indemnity obligation, but here the insurance company has a duty to defend whether or not the allegations are false or groundless. Okay. Didn't the original complaint plead intent to defraud and isn't that an actual injury? So, yes, Your Honor, it did, but it pled that in a separate paragraph and what it sought in that paragraph, what it explicitly said, is intent to defraud which justifies punitive damages. So in count two, the underlying plaintiffs have pled for two things. They've pled compensatory damages, which does not need any showing of an intent to defraud, and then in a separate paragraph, in count three, they also pled for punitive damages, and that's where they had the intent to defraud allegation. All right. Now, you have essentially conceded that the, we'll call it the punch list count, or the punch list issue is not subject to coverage by the policy, correct? Your Honor, I've been practicing for 32 years, so I hate to use the word conceded, but we're not arguing it should be covered. I get it. But in making, if you were successful in getting the duty to defend here on the, we'll call it the $25,000 count, just so that we don't use any words that are deceptive here, they would cover the whole thing, right? You would request that they cover the whole litigation. Well, when you say cover, they would have a duty, in my mind, under the clear law, they would have a duty to defend the entire case. Okay. All right. So, let's go to, again, the complaint, which you said was provided. How do the allegations in that complaint and the responsibility to stick with those allegations or to consider those allegations sit with the Shriver and Precision Dose case again? So, again, it's only a function of all my client needs show is that there was a potential, a scenario that, where this claim could be covered, which does not, you know, require plaintiffs to prove facts that would take the case out of coverage. The only way that Pekin can take this case out of coverage is by showing that there was an intent to injure. Plaintiffs can prevail on conversion without showing any intent to injure, and that's what's alleged here. Not an intent to injure, just intentional conduct in the taking itself. So, in a situation, you know, somebody puts their wallet down on the table that's right next to me. The wallet looks just like mine. I take the wallet. I put it in my pocket. They ask for their wallet back. I say, it's not your wallet. I don't have to return it. I'm mistaken. That's an accident. There's no intent to injure there, but there was an intentional act. I did take the wallet. Yeah, but at that point, you can give the wallet back because it's in your pocket. He couldn't give the wallet back or the wood back, could he? He could not give the wood back, but I could have walked away with the wallet as well after, you know, he asked for it back. It's still an accident. It's just, but there's no intent to injure there. It's still an accident. All right. In the interrogatory issue, when were those answers or when was that answer tendered to the court or made part of this record for the court to consider in this case? Your Honor, I think that the interrogatory answers were August or September of 2018 and the summary judgment motions were January, February of 2019 and the interrogatory answers were tendered in connection with the summary judgment briefs. Okay, so why wasn't it done sooner if that was so important to the process? Pekin had already denied at that point in time. Pekin was welcome to monitor or do whatever it wanted in the underlying case, but I didn't feel at that point in time by tendering the interrogatory answers when I got them that Pekin would have taken any different position. They had already denied. They were locked into their position based on the allegations of the complaint. But you were in litigation by that time, so it wasn't like they would have been surprised by it and ultimately maybe they were surprised by it. Is that part of the issue? I don't believe that they have raised the timing of when they received the interrogatory answers in any of the briefs. And why did the court say they wouldn't consider it or it wouldn't consider? Because the court believed it was only appropriate to look at the policy and the complaint. I don't have any other questions at this time. Thank you, Counsel, and thank you Justice Burkett. Thank you, Honor. Justice Shast is your question? Yes, thank you. You know, the only issue that I have, and I think Justice Hutchinson really raised it, was that that being mistakenly removed by the subcontractor wasn't included until your counterclaim for declaratory judgment. So whether or not they had already declined coverage and you didn't think that that was going to change their mind, I mean, why was not that included earlier? If that were the case. Well, I think that, first of all, Your Honor, I wrote letters to Peek and they're not part of the record, but I discussed my client's position. I bring up that scenario about the subcontractor, not because it's part of plaintiff's complaint, but again, my burden is only to show that there is a potential for coverage. So again, the underlying plaintiffs have alleged materials were taken, but they don't allege why or how. The underlying plaintiffs have alleged that the materials were not returned, but they don't allege why or how. I only have to show a potential for coverage, a possible scenario where there's coverage, because everything has to be construed in the insured's favor. So here, I give you that scenario, but there could be other scenarios as well. I'm giving you the one that my client claims, but... So you're submitting that there's certainly an issue of fact for the trier effect? Correct. On how those and why those boards were removed? Correct. Is that correct? Yes, Your Honor, that's correct. And based on that, I mean, there's clearly a potential where there's coverage here, and that's all, again, I need to show. Okay. Thank you. Thank you, Your Honor. Mr. Barone, is the name of the subcontractor or the individuals who allegedly took the materials that were intended to be repurposed in the pleadings? Your Honor, I'm sorry. I don't know if it was in our counterclaim, if the name was or not. It is not in the Hula Miller's complaint. They wouldn't have known the name of the subcontractor because Mr. McEwen did not give them the name. My question is, there's no... I didn't see in the record the name of the subcontractor or the individuals who removed the materials identified anywhere in the record. Is that correct? Your Honor, if you didn't see it, I'm certain that's correct. I didn't check for it, but I certainly defer to you. Under the true but unpleaded facts doctrine, for you to be successful in looking outside of the pleadings, wouldn't you have to furnish that type of information in the form of an affidavit or some kind of sworn statement? In the true but unpled facts doctrine, in my mind, that focuses on the period of time before the denial occurred. It's what the insurance company knew before the denial occurred. That information was not supplied to them before the denial occurred. Of course, my client didn't have any idea that they were going to deny. My argument is that under Pekin and on motion for summary judgment, the court can still consider matters that are outside of the get there because based on the Hula Miller's complaint alone, there's a potential for coverage, so the duty to defend exists. Well, there's no dispute. Is there that Pekin was not informed of your quote-unquote mistake slash accident theory until you filed the counterclaim? I don't think that's true, but there's nothing in the record, though, Your Honor. We look at the record. We don't look... I agree, Your Honor. That's why I said there's nothing in the record. I'm just trying to... It may have been in correspondence, but I agree, Your Honor. It was not part of the record. I understand it. All right. That's all I have. Thank you. Thank you, Your Honor. Mr. Berglund. Good morning, Your Honors. This is Rich Berglund. I represent Pekin Insurance Company in this matter. We are the appellee. May it please the court. As Mr. Brony discussed, we are here today to talk about the duty to defend, and that's what we've been talking about. As everyone knows, an insurer's duty to defend is determined in the first instance by comparing the allegations of the complaint to the terms of the policy. Here, the complaint alleges in count two that McKeon took the claimant's property without permission, refused to return it, and did so with the intent to defraud. The Pekin policy provides that Pekin will pay damages because of property damage caused by an occurrence. The policy defines the term occurrence as an accident. So I've been talking about this positive inquiry here is whether count two for conversion alleges that a covered accident occurred. The clear and unequivocal language of the complaint confirms that there was no accident alleged. The claimants clearly alleged that McKeon took their property without permission, refused to return it, and did so with the intent to defraud. Counsel suggests that the allegations of intent to injure do not sweep the claim outside of coverage. Counsel asserts that the allegations of intentional injury should be ignored because they are not necessary to prove the claimant's claim for conversion. But we would submit to the court that the court cannot ignore the allegations of the complaint. The court is charged with considering each and every allegation to determine whether or not the claim is covered. Application of that basic principle in this case shows that the circuit court made the right decision and that there is no coverage for McKeon. McKeon's argument that there should be coverage because the claimants can prove conversion without also proving an intent to injure is flawed. Main reason being is the claimants did not, do not plead an unintentional or accidental conversion. They did not plead that McKeon acted in good faith but in ignorance of their rights. They did not plead that in taking their property, McKeon was acting under a misapprehension or mistake. They expressly pled that McKeon took the claimant's property without permission, refused to return it, and did so with the intent to defraud. If I sound like a broken record, it's because I am here. This is a case where Pekin does not have to do much more than simply tell the court to look at the allegations of count two in the terms of the policy. Comparing these together shows that there is no coverage here. We have a conversion claim with four substantive allegations, one of which states that McKeon undertook to convert the claimant's property with the intent to defraud. There simply is no coverage under the Pekin policy for conversion of property with the intent to defraud. Counsel referred to this court's decision in Hallmark Holmes, but I believe he did so in error, basically for the proposition that this court can ignore boilerplate language contained in the underlying complaint here specifically, that would be the punitive damages allegations. In Hallmark Holmes, though, this court did not ignore the boilerplate phrase, the defendants, and each of them. Instead, the court found that, and this is a quote from the decision, nothing about the phrase foreclosed the possibility of any one defendant being found solely liable under the complaint. This is page 597 and 598. In that case, the Pekin endorsement only covered the additional insured for liability incurred solely as a result of some act or omission of the named insured. There, the court did not ignore the boilerplate allegations. It actually specifically considered them and said that they did not foreclose the possibility of coverage. There were a couple of cases that were cited in the briefs that counsel did not discuss that I wanted to touch on, and those are the Cincinnati and Utica cases. It's our position that those, that the court should not consider those or find them persuasive, first because they're both federal decisions that have not been cited by any court in Illinois for the proposition that a conversion claim is covered under a CGL policy. The Cincinnati case, the one authored by Justice Posner, has been cited by the first district in Cincinnati v. American Hardware, 387 LAP 85, to find that an allegedly reckless defamation was covered. Again, here, there are no allegations of recklessness in the underlying complaint. Further, the reasoning in the Cincinnati case and the Utica case cited by McKeon and any other case for that matter involving defamation or disparagement is just not a perfect fit for determining whether there's a duty to defend this conversion claim. Defamation and conversion are separate and distinct torts. Defamation is often expressly covered by personal injury or advertising injury provisions in the CGL policy. Just like in the Cincinnati case, defamation usually is an expressly enumerated and covered tort. And as such, the risk is already underwritten and agreed upon as a covered action by the parties. Conversion, on the other hand, is not an enumerated tort covered by CGL policies. It's not covered by the PECOM policy specifically. The insurance industry has not agreed to uniformly cover conversion under personal and advertising injury provisions. If the court were to accept McKeon's argument here, every conversion claim would be covered so long as a complaint somewhere contains the basic elements of conversion, regardless of what else the plaintiff may have alleged about the insured's conduct. That simply should not be the case. While coverage does not hinge on the draftsmanship skills of the plaintiff, it certainly begins in the first instance with an examination of all the allegations in the underlying complaint. McKeon's position would have the court put on blinders and only look at those facts which McKeon believes trigger coverage. It creates a slippery slope. Where does it end? The better reasoned approach is one that courts have been using for years, like in the Danner case we cited in our brief. And that's to consider the entire complaint as a whole. Regarding McKeon's counterclaims, counterclaim in this action, the court should not consider the allegations therein for two reasons. First, they are self-serving allegations that were filed after Peek and Puttitt's complaint for declaratory judgment on file. There's abundance of case law holding that self-serving allegations contained in pleadings filed by the insured cannot be considered in determining the duty to defend, especially where they're filed after the declaratory judgment's on file. Another reason McKeon's counterclaim should not be considered is that it contains facts that are barred from consideration by the true but unpleaded facts doctrine. These are purported facts of which Peek and Puttitt was not aware until McKeon filed its counterclaim and thus should not be considered in determining Peek and Puttitt's duty to defend. This court's decision in precision dose is directly on point there, and we submit that this court should follow the precision dose case here. Regarding the answers to interrogatories, they simply just do not trigger a duty to defend. I mean, if anything, they show exactly what happened if they are considered at all. We would submit they should not be considered first because they're extrinsic materials that are outside the underlying complaint that only came to Peek and's knowledge after the filing of the declaratory action. And second, they don't demonstrate that the claimant's complaint should be read as alleging an accident. In fact, they show the complete opposite. They say nothing more than that there was a conversation where McKeon told the claimants that there was some mix up with their property. And then thereafter, apparently after this conversation, the claimants didn't believe McKeon because they filed a claim for conversion alleging that McKeon intended to defraud them. So I just don't see how these interrogatories, even if they are considered, create some possibility of coverage. Regarding some sort of factual determination that the court made, there's now there's an assertion in McKeon's brief that the court intruded on the fact finding process in the underlying action. But that's not true. The court simply took a look at the underlying complaint and made the relatively easy conclusion that there is no accident alleged, that this is a claim that is not covered, there is no occurrence. And such a finding does not preclude McKeon from asserting in the underlying action that its conversion was not willful, wanton, malicious, and oppressive or undertaken with the intent of fraud. So for all those reasons and the reasons stated in our brief, I request that this court respectfully affirm the judgment of the circuit court and now I'd be happy to take any questions. Dr. Sutchinson, your question. Thank you. Mr. Berglund, when the insurance company looks at this, do they just look at the word conversion and say, no way, because it's an intentional tort? No, you have to take a look at all of the allegations in the underlying complaint. You don't just look at the labels. The insurance company gets the complaint and its task is to go through the allegations and to determine whether or not they're covered, not to look at the labels. Well, you did talk about the fact that the insurance industry has not chosen to basically cover conversion. Is it because it's considered an intentional tort? Well, those other torts are intentional as well. Right. Right. It's just that they haven't put that specifically in the policies and that's what I think that the courts struggled with in Cincinnati and Utica was that there was this coverage for intentional torts specifically placed in the policy and then there was this exclusion saying, oh, yeah, we don't cover intentional acts. It's like, well, how does that work? So that's why I wanted to bring that up because I think that those cases are distinguishable from the case here based on the nature of the torts themselves and the fact that one appears in the policy and one doesn't. Okay. Hold on a minute. I have another question that I'm going to let me let me ask this one first. Why then can you not look at the issue of conversion as intentional, but what was intended or what happened, which here is the deprivation of this clubhouse as they envisioned it, an accident? Why can't you separate them? Well, first of all, we have to look at the allegations of the underlying complaint and the claimants don't allege that this was an accident. Everything about the allegations themselves shows that it wasn't. So in order for us to, you know, assume that there's some possibility that it was an accident, that's what we would have to do. We'd have to assume that, you know, the plaintiffs don't know what they're And even if you consider all of these extrinsic materials that with the exception of the exception of the counterclaim allegations in the counterclaim accounts, counterclaim, it just looks like what happened here is that they took the property and in assuming that the property was destroyed, that there was some sort of promise that, you know, hey, we're on our goof up or whatever. And that never happened. And so there was in the plaintiff's mind, there was this, this was intentional. This was, they did set out here, McKeon, to defraud them. And this wasn't some accident or some innocent, you know, conversion, whoops, I picked up the wrong wallet. Just like you said, it's like, okay, so they pick up the wrong wallet. But when the claimants ask for the wallet back, they can't give them the wallet back because it's been destroyed. And they don't even do what they promised to do to make it right. You know, so I think that's, that's what we're looking at here. But first and foremost, you look at the underlying complaint and there's, there's no suggestion or even hint that, that there was any accident here. Okay. If, in fact, the insured had answered the complaint with essentially the term set forth in the counterclaim here, would your position be different as to duty to defend? I think it depends on when that answer came and how it was, was pled and presented to Pekin. I can't say for sure how Pekin would have responded with that information without knowing kind of those additional facts. Is it generally custom and practice that the case gets tendered before answer if they're requesting a duty to defend? You know, this case was tendered, I believe, and Mr. Brony can correct me if I'm wrong here, it was tendered about, I think it was initially filed in April of 2018 and we didn't receive notice of it until late June. So I assume that an answer had already been on file. I did, before I came here, I looked through our claim file and I did see that there was an answer and an affirmative defense that had been filed, but I can't confirm whether or not that ended up in the record. So I don't want to bring it up here because if it's not in the record, then I clearly can't discuss it. Well, why, if there was an answer, why wouldn't it be in the record? I'm curious. I can ask Mr. Brony too, but I'm asking you. You're asking me? Yeah, typically when we file a complaint for declaratory judgment, we do not include the answer. We just include the underlying complaint. But if the underlying complaint is answered and it creates a question of fact, wouldn't that be relevant to this type of an inquiry? Yeah, I mean, we might not be here if it did. But I can't, because it's not in the record, I can't, I don't want to speak to it. I'm looking at it on my screen, but I can't find it in the record right now. So I'd love to be able to point you to that so you could take a look at it. What does PECAN say when they deny coverage, or not coverage, pardon me, duty to defend? Do they just say we decline, or do they set out reasons? Standard practice is to prepare a declination of coverage letter, and we send that to the insured, and then we inform them that we will, if they don't agree with our position or withdraw the tender, that we'd likely file a complaint for declaratory judgment. And we set forth all of the reasons why it's not covered. Okay. So in that answer, you probably would say in this case, we have considered the complaint underlying, the answer to the complaint, and the affirmative defenses that have been filed on your behalf? Or you wouldn't acknowledge the answer or the affirmative defenses? It depends on when we get the suit. I mean, we could get the suit a day after it was served on the insured. Well, that's not going to happen, that you have answers. You've gotten this considerably afterwards, right? This one, right. Yeah, but I don't know. I can look real quick to see when the answer was filed. Again, it's not in the record, so let me see here. I'm sorry. Hold on. No, it's okay. I apologize to my colleagues that I'm taking maybe- No, it's okay. We have it in the claim file, and I wanted to look at this, because I figured it might come up. Let's see here. All right. Answer. I don't have a file stamp on it. It must not have been electronically filed, but we do have it, and it's dated August 8th, 2018 is the file stamp that PECAN put on it. So we had it as of August 8th, 2018. And before your denial of the tender. Correct? I have to check that, too. All right. Never mind. We'll check. If the interrogatories, you know, why couldn't the-we ask this in criminal cases a lot. This is my first chance to ask it in this kind of a case, but I do attend, so I'm going to ask you now. All right. If you could have distinguished those interrogatories or said, wait a minute, they're not relevant to our initial inquiry, why didn't you just let them in and make the argument you made to us here today? It's not relevant. You mean in the circuit court? Yes. I think we did, but we kind of did it on two fronts, since you don't need to consider them, even if you do, that they don't matter. I think we did make that, but I think that the circuit court just glommed on to the first one. All right. Let me just check my notes here, if I may, for a moment. All right. I have no other questions at this time. Thank you, Mr. Berglund, and thank you, Justice Burkett. Yes, that's what I said. But I was thinking. Justice Hutchinson asked a lot of the questions that I was looking at. My main question is, you indicated that the intent to defraud is the issue, but isn't that an issue of fact that should be reserved for the trier effect to determine whether or not, what the basis was behind those boards being taken? Absolutely. And that's what the trier effect in this case will do. But in determining the duty to defend, you have to start with the allegations of the complaint. And if the allegations of the complaint say, you know, you acted with an intent to defraud, then that's how the plaintiff has cast their claim. So when a court takes a look at that and says, okay, there's no coverage because the claim is an intentional, you know, injury claim, it's not saying, it's not making a factual determination. It's just saying this is what the allegations are. It's not saying whether they're true or false. All right. Thank you. Anything else, Justice Shostak, is that it? That's it. Okay. Thank you. Thank you, Mr. Berglund. We talked about the answer to the complaint. I looked for any information in the record as to the name of the subcontractor or any affidavit.  that, you know, the demolition. I have not seen that. No, Your Honor. And is your position that under the true but unpleaded facts doctrine, the insurance company would have to have an opportunity to investigate that possibility before denial of coverage, correct? That's correct, Your Honor. It's kind of the purpose. One of the main purposes of the doctrine. All right. That's all I have. Thank you. Thank you. Mr. Butler. I want to focus on just the allegations of the complaint. The case by the underlying plaintiffs was not cast as a case involving an intent to injure and intent to defraud. The plaintiff has done what many plaintiffs do. The plaintiff has pled in count two for both compensatory damages, which does not require any finding of intentional conduct or willful wanton or intent to defraud, and has also sought punitive damages and has alleged additional allegations to support that claim for punitive damages. It is absolutely possible in the underlying case, based on the plaintiff's complaint, that the plaintiff could prevail on the allegations of paragraphs 20 through 22, which do not include any allegation of an intent to defraud, and not prevail on paragraph 23. The duty to defend is based on numerous cases in Illinois on whether there's any potential there's coverage. That's a clear potential there, that the plaintiff could prove the conduct in paragraphs 20 through 22 without ever finding any type of intent to defraud. Pekin is also wrong that courts have not found conversion claims are covered by a CGL policy. In fact, in Pekin versus X data, which is cited in the complaints, there was coverage by a duty to defend found for a conversion claim and coverage in insurance court versus Shelburne, which is cited in the complaints. Again, there was coverage found for a conversion claim. Also, the plaintiff doesn't have to, the underlying plaintiffs, the Hewlett-Millers, they don't have to allege any type of accident. They don't have to allege anything bringing this claim within the scope of coverage. My client is entitled to a defense unless plaintiffs would have to prove facts that would positively take the claim outside of coverage. Here, the only way that would occur is if they proved an intent to defraud. And as I said, they don't have to prove an intent to defraud to prevail. They can prevail on paragraphs 20 through 22 without showing any type of intent to defraud. So there's a clear potential for coverage here. Pekin is focusing on paragraph 23 because that's all they got. The other paragraphs don't plead any type of intent to injure. I think this case, oh, and in the Hallmark case, the plaintiff specifically pled that all the defendants were negligent. Coverage would only exist if one defendant was negligent and the other defendant's liability arose out of negligence of the other defendant. This court determined that there was a possibility that that could, in fact, occur despite the fact that that's not what plaintiff pled and ruled that there was a duty to defend. That's the same situation here. It's a distinct possibility the plaintiffs could prevail on paragraphs 20 through 22 without prevailing on paragraph 23, which is just an alternative allegation to justify a finding for punitive damages. Paragraph 23 is not necessary for a plaintiff to prevail, so it should not defeat the duty to defend. Thank you, Your Honors. Justice Hutchinson, any questions? Yes, just one or two. Thank you. In the cases that you indicated that there has been coverage or has been duty to defend determined, one of them I think maybe being Shelburne, didn't the pleadings actually have alternative and made it clear that there was an alternative that could have been applied, that being negligent? Here there is no such actual allegation made, is there? I agree that there's difference in the allegation, yes, Your Honor. Well, what is Pekin supposed to be looking at, the whole complaint and the allegations, correct? Correct, so they look at Paragraph 20, and that is not inconsistent with an accident, there's a possibility it could be an accident. They look at Paragraph 21 and they look at Paragraph 23 or 22, all of those can be an accident. In fact, even Paragraph 23 could be an accident because the trier of fact could find that there was willful and wanton conduct, which is just a degree of negligence, and not find an intent to defraud. So if they look at the complaint, that's what they're supposed to do. They're only supposed to deny a duty to defend if there's no scenario where there could be coverage, and I've identified numerous scenarios where there could be coverage. Or duty to defend, which is what we're here about. Your Honor, you're right, I meant the potential for coverage, which is what would trigger the duty to defend. I'm doing the same thing, so I'm not chastising, I'm just trying to keep it straight in my own mind. Okay. Ian, I know I had something else. And because I'm old, I can't remember. Oh, did you, in fact, when you tendered the actual case, was there an answer attached? That you sent? I don't believe so, Your Honor. Well, wouldn't that be relevant to an inquiry, especially your affirmative defenses, an inquiry, and wouldn't it identify those facts that you think would take this out of the exclusion? So, I agree with the general proposition that the duty to defend is determined based on looking at the policy and the complaint. There's really no cases out there which talk about the fact that the insurance company has to look at the answer. So, no, I don't know that it would have been helpful to include the answer or any answer was done at the time. The Hula Miller's interrogatory answers, which I believe create a question of fact, are different because those aren't prepared by McEwen, and it seems that the cases that have talked about the court considering extrinsic evidence are dubious of materials like an answer or something else that the insured prepares, but the answers to interrogatories were prepared by the Hula Miller's. But typical practice is you would send to the insurance company the complaint because generally they would hire an attorney right away, and that attorney would prepare the answer. I understand the suspicion of things prepared by the claimant here, or not the claimant, but the party, the insurer. But if the facts are true, or if the allegations in the complaint and answer are true, or presumed as true, why wouldn't it be something that would be relevant to their inquiry on duty to defend? Well, the answer was sent to them to peek, and I just don't know if it was sent at the time of the tender. Okay. All right. Thank you, counsel and Justice Burkett. I have no other questions. Justice Shostak. No, the only questions I had were the same thing as Justice Hutchinson, where you were talking about a duty to defend versus a duty, duty to defend versus liability. And I think you, we all cleared that up. So he isn't, you are entitled to defend yourself with respect to the allegations. You just may not be covered. Correct. Correct. The duty to defend is much broader than, than the duty to identify. Right. Right. Right. Okay. That's all I have. Thank you. Thank you, Mr. Baroni. You, in your argument, you're parsing out the paragraphs of the complaint, but isn't the responsibility of the trial court and us on review to look at the complaint in its entirety and not some hypothetical version? I'm not asking this court to look at a hypothetical version. What I'm asking this court to do is look at the actual complaint, paragraphs 20 through 22. And I'm arguing that there is a potential for coverage there. The fact, what I'm saying is the fact that simply because the underlying plaintiff also added a paragraph 23 that justifies a punitive damage claim, that they don't have to prove that to prevail. And that doesn't obviate the duty to defend. In fact, there are numerous cases which said that the duty to defend isn't based on the draftsmanship skills of plaintiffs, et cetera. In fact, if that were the case, if this court had to rule based on intent to defraud in paragraph 23, that would mean that any plaintiff could destroy a defendant's ability to get a claim by throwing some sort of intentional intent to harm allegation in a complaint. And in fact, the courts instead have ruled that all darts are in favor of the insured. Everything is to be construed in favor of the insured just to prevent this type of thing. There's no case that Pekin can cite, which indicates that an allegation, which is not necessary for the claimant to prove somehow can defeat the duty to defend. There's nothing out there with respect to there being nothing out there. Is there a case that you have where the insured police facts later on after the complaint is filed, the underlying complaint is filed and never informs the insurance company of that person or persons who are actually responsible for the loss period. And here, McEwen never provided Pekin with information as to who this subcontractor that did the demolition was correct. That's correct. All right. That's all I had. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court stands adjourned and justices Hutchinson and Shostak. I'll initiate the call. Thank you. Thank you, your honors. Thank you, your honors. Thank you.